(C. D. 437)

HUMMEL CHEMICAL CO. *v.* UNITED STATES

United States Customs Court, First Division

(Decided February 19, 1941)

*Lamb & Lerch* (*John G. Lerch* and *Thomas J. McKenna* of counsel) for the plaintiff.

*Webster J. Oliver,* Assistant Attorney General (*John J. McDermott, Richard E. FitzGibbons* and *Richard F. Weeks,* special attorneys, and *Frank X. O'Donnell, Jr.,* junior attorney), for the defendant.

*Oliver, P. J.,* did not participate in the consideration or decision of this case.

Before BROWN and WALKER, Judges

WALKER, Judge: This is a suit brought against the United States in which the plaintiff seeks to recover duties collected under the provi-

sions of the Revenue Act of 1932 on an importation of a commodity described on the invoice as "wool grease." It was classified by the collector as wool grease and he assessed duty thereon at the rate of 1 cent per pound under the provision in paragraph 52 of the Tariff Act of 1930 for wool grease containing more than 2 per centum of free fatty acids. No question is raised by the plaintiff as to that assessment, but the protest is directed against the action of the collector in also assessing duty at the rate of 3 cents per pound under the provision in section 601 (c) (8) of the Revenue Act of 1932 as amended by section 701 of the Revenue Act of 1936 for "inedible animal oils, inedible animal fats, inedible animal greases," claiming that the merchandise at bar is entitled to exemption from such duty on the ground that it is an inedible animal wax, and not an oil, fat, or grease.

There seems to be no question but that the substance in issue is a byproduct resulting from the scouring of wool and that it is commonly as well as commercially known as wool grease or degras. Some evidence and authority were offered and cited by the plaintiff to the effect that the commodity is also known as wool fat or wool wax, while other evidence offered by the defendant indicates that wool wax is a more highly refined product than that before us, but we regard none of such evidence or authority as controlling for the reason that it appears that the commodity is most generally known as wool grease or degras, both plaintiff's and defendant's evidence agreeing on that point.

It also appears to be undisputed that wool grease is bought and sold in various grades of refinement, differing in fatty acid content, and that the merchandise at bar is inedible.

The main point of difference between the testimony given by plaintiff's witnesses and that given on behalf of the defendant lies in the matter of interpreting the results of chemical analyses of the merchandise in question. For the plaintiff, witnesses Ralph W. Bailey and Henry H. High, shown to be well-qualified chemists, each testified that he had analyzed a sample of the imported product and found it not to be an oil, fat, or grease. Each of the witnesses based that statement upon the fact that saponification of the product shows an absence of glycerine, and that its saponification value is low, the value found corresponding with that of wax. Explaining this in detail in answer to a question by plaintiff's counsel, witness High testified:

The difference between oils, fats, greases, and waxes is that the first three items are composed of glycerides, of organic acids. These organic acids may be either the saturated acids of the acetic acid series, or unsaturated acids of the propiolic acid series. The waxes, however, are esters which, when hydrolyzed, do not yield glycerol, but hydrolyze to higher saturated nonatomic alcohols and higher fatty acids.

In support of this testimony plaintiff's counsel in the brief filed in its behalf quotes the following excerpts from scientific works:

"Industrial Chemistry" by Rogers, referring to "woolfat":

It occurs in large quantities as an external coating on the fiber; it is the natural exudation of the sheep and serves as a protection to the fiber. It differs from animal fats in that it does not consist of the glycerides of the fatty acids and it is very differently saponifiable with caustic alkalies. It possesses the chemical properties of a wax as it is composed wholly of the higher solid alcohols known as cholesterine and ischolesterine both in the free state and as esters with the fatty acids. Though insoluble in water and not saponifiable by alkalies, it is easily emulsified but soluble in naphtha and other volatile solvents.

"Chemical Technology and Analysis of Oils, Fats and Waxes" by Lewkowitch:

Waxes are combinations of alcohols with higher fatty acids, insoluble in water, but soluble in volatile solvents.

Same work, 6th ed., vol. 1, p. 66:

The most essential point of difference between fats and waxes has been explained already. Fats are the glycyl esters of the higher fatty acids, whilst the waxes proper must be considered as esters formed by the combination of mono- or dihydric alcohols with higher fatty acids * * *.

Therefore, whilst all fats have one common basic constituent—namely, the trihydric alcohol: glycerol—the waxes are characterised by their basic constituents being monohydric and dihydric alcohols.

"Technical Hand Book of Oils, Fats and Waxes" by Fryer, p. 7, Sec. 13:

The natural waxes (i. e. those derived from animal and vegetable sources) resemble fats very closely in most of their properties. They, however, contain no glycerides and thus can yield no glycerine on being subjected to the same treatment which causes fats to yield glycerine.

According to the witness Bailey "the term wool grease is not a correct designation from a chemical standpoint" since as a basic proposition as it comes from the sheep it is a wax and not a grease or fat to the chemist.

For the defendant Dwight W. Bartlett, a Government chemist of long experience, testified as follows:

Now, the scientists have tried to distinguish between waxes and fats of chemical composition. They say that fats are combinations of glycerine and fatty acids, whereas all waxes—that is, animal and vegetable waxes I am talking about—are combinations of fatty acids with high molecular alcohols—fatty alcohols. Following that definition, which is not the common definition, wool grease is a wax, because it is a combination, essentially a combination of fatty acids and high molecular alcohols. * * * In other words, all fatty substances are combinations of fatty acids and glycerine, whereas all waxes are combinations of fatty acids and high molecular fatty alcohol. But I say that is just a distinction that the scientists have tried to make, and it is not generally accepted. I mean it is not accepted as a common definition of fats and waxes.

Asked by the court, "Do you think it would be a wrong distinction?" the witness replied:

I think it would be a very good distinction if it were accepted. It is confusing the way it is now.

We are satisfied that no purpose would be served by further delineation of the record, which was long, detailed, and technical. Briefly stated the situation developed appears to be this: That the merchandise is commonly and commercially known as wool grease although scientifically it is known as a wax.

"Grease" is defined in Funk & Wagnalls New Standard Dictionary as—

Animal fat, especially when soft; any fatty, oily, or unctuous substance. It is often named from the animal which furnishes it; as dog *grease*, emu-*grease*.

This accords with the court's understanding of the common meaning of the term, and an examination of exhibit 1, a sample of the merchandise in issue, shows it to be oily or unctuous and to respond to the definition.

"Wax" is defined in the same authority as follows:

wax. n. 1. A yellow, fatty solid of animal origin, excreted by bees from the abdominal rings, beeswax. * * *

2. Any of several substances of wax-like appearance and consistency. Specif.: (1) *Chem.* Any wax-forming ester.

The *waxes* are distinguished from the fats in that they consist of esters of monohydric alcohols with high molecular weight, whereas the fats are esters of the trihydric alcohol, glycerol. Spermacetti belongs to the wax variety.

Richter, *Organic Chemistry*, vol. i, p. 257 [P. B. & Co. '08.]

(2) *Bot.* Same as Vegetable Wax. (3) *Physiol.* Same as Cerumen.

(4) *Zool.* A wax secreted by any of several coccids. See Wax-insect. (5) A substance used for joining surfaces, sealing documents, etc., as sealing-wax. (6) Same as Shoemaker's Wax. Waxes are named from (1) the country where they are produced, as Brazil Wax (see Carnauba), Chinese Wax (secreted by a wax-insect in the twigs of the Chinese ash-tree), Indian Wax (an insect-wax), Japan or Japanese Wax (obtained from Japanese ash-trees); or (2) from the substance from which they are obtained, as balanophore wax (see Balanophora), becuiba-wax, candleberry-wax, cochineal-wax, cork-wax (same as Cerin), cotton-wax, cow-tree wax, earth or mineral wax, fig-wax, milk-tree wax, myrtle-berry wax, opium-wax, pine-wax (found on the needles of the Scotch fir), sugar-cane wax (same as Cerosin).

Counsel for the plaintiff has cited the case of *United States* v. *Merck & Co.*, 8 Ct. Cust. Appls. 171, T. D. 37288, for the proposition, as stated in their brief, that—

In the ascertainment of the factual question as to whether the substance is a wax or a grease resort may be had to scientific works, dictionaries, books, periodicals and other like material * * * as well as to the testimony of witnesses.

and points out that the testimony of the witnesses Bailey and High conforms to the definitions found in the authorities already quoted

from. In the *Merck* case, however, the court specifically found that for the term there in question there was no commonly understood meaning contrary to the scientific meaning as shown by the record and authorities. In the case at bar the converse appears to be true. In the ordinary and common acceptation of the terms the determination of what is a "grease" or a "wax" depends generally upon physical appearance, the former being oily or unctuous and the latter being of the appearance and consistency of beeswax. In the scientific sense the determination depends upon chemical composition, and what to the layman would appear to be a grease might be a wax to the chemist, and vice versa. The testimony of plaintiff's witness Bailey with regard to wool grease indicates it was confined to his understanding as a chemist, while plaintiff's witness High testified in answer to a question from the court as follows:

Q. Well, you recognize a difference between the common understanding of the term "grease" and your scientific definition?—A. There is a big difference, yes.

and the testimony of defendant's witness Bartlett also indicates a difference at least between the common meaning of the term "wax" and its meaning to the chemist, although he insisted that there was no scientific meaning for the term "grease" different from its common meaning.

In the *Merck* case, *supra*, the court took occasion to quote the following from *Lutz* v. *Magone*, 153 U. S. 105:

It is entirely well settled, however, that in the interpretation of the revenue laws words are to be taken in their commonly received and popular sense, or according to their commercial designation, if that differs from the ordinary understanding of the word. Customs officers are presumed to be acquainted with the ordinary meaning of words, and may also be presumed to have some familiarity with trade designations and the customs of dealers. They are not, however, supposed to be chemists, scientists, or professional men, nor to be conversant with the terms of particular arts.

The rule thus formulated is one of the pillars of customs law and has been frequently applied. Perhaps the clearest application is to be found in the case of *Meyer & Lange et al.* v. *United States*, 6 Ct. Cust. Appls. 181, T. D. 35436. In that case tunny fish in tins were classified by the collector under the provision in paragraph 270 of the Tariff Act of 1909 for—

\* \* \* All other fish (except shellfish) in tin packages \* \* \*

The importers lodged a protest against the consequent assessment of duty at the rate of 30 percent, claiming that the fish were in fact mackerel, dutiable at a lower rate, and offered evidence at the trial showing that the tunny fish belongs to the mackerel family. The court said:

Without doubt the tunny is, scientifically speaking, a member of the mackerel family, and that scientific classification is unquestionably recognized by most, if not all, modern dictionaries. Nevertheless, the fact remains that such a classification is purely scientific and can not be accepted as determinative of the common, ordinary, and popular meaning of the term "mackerel". Whether a fish is of one kind or another and what name it should bear is determined by the scientist in accordance with scientific rules founded on the scientific truth that fishes are distinguished by peculiarities and characteristics upon the basis of which they may be systematically classified and separated into designated families, subfamilies, general, and species. It cannot be said, however, that such designations and classifications have been popularly recognized or that the popular names of fishes have been adopted in pursuance of any rule which would bring such names into harmony with those sanctioned by science. Indeed, it is a matter of common knowledge that many popular names have been applied to fishes and other things wholly without regard to scientific usage or classification, and that such designations not infrequently are to the scientist shockingly incorrect. Therefore, not withstanding the fact that science has given the name "mackerel" to a whole family of fishes, popular usage may limit the designation to a particular species of the family or extend it to fishes which, scientifically speaking, are not mackerel at all. *As tariff acts are drafted not in the terms of science but in the language of commerce, which is presumptively that in common use,* it follows that even if the tunny fish be a mackerel according to scientific terminology, it can not be classified as such for customs purposes unless it be popularly or commercially so regarded. [Italics ours.]

We are of the opinion that the case at bar is a proper one for the application of the rule. The merchandise at bar is commonly and commercially known by the term "grease" and falls within the common understanding of what constitutes a grease, being oily or unctuous, although scientifically it may be known as and have the characteristics of a wax.

Judgment will therefore issue in favor of the defendant.